BUMPUS v. LOVEJOY. (No. 226.)

(Court of Civil Appeals of Texas. Beaumont. May 11, 1917.)

1. PRINCIPAL AND SURETY ⬬160—LIABILITY—NOTICE REQUISITES.

As notice by surety to obligee to collect from the principal must be in writing, verbal request is inadmissible.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 436–438.]

2. PRINCIPAL AND SURETY ⬬45—RELATION —EVIDENCE—SUFFICIENCY.

Evidence *held* to show that defendant promised to pay plaintiff individually and not as surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 22.]

3. PRINCIPAL AND SURETY ⬬161—LIABILITY—NOTICE REQUISITES—EVIDENCE—SUFFICIENCY.

Evidence *held* insufficient to show that defendant, who claimed to be a surety, gave the required notice to the obligee to collect from the principal.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 85, 439–441.]

4. PRINCIPAL AND SURETY ⚖═126(1)—LIA-
BILITY—NOTICE—INSOLVENCY OF PRINCIPAL
—EFFECT.

Where the principal is insolvent when the
surety gives the obligee notice to collect from
the principal, the surety is not released by such
notice.

[Ed. Note.—For other cases, see Principal and
Surety, Cent. Dig. §§ 329–341, 345, 351.]

Appeal from Harris County Court; Murray
B. Jones, Judge.

Action by J. E. Bumpus against John Love-
joy. Judgment for defendant, and plaintiff
appeals. Appeal was transferred. Reversed
and rendered.

Harry Holmes, of Houston, for appellant.
Andrews, Streetman, Burns & Logue, of
Houston, for appellee.

BROOKE, J. This was an action for debt
by J. E. Bumpus against John Lovejoy, for
services rendered as foreman and driller on
certain oil wells. Plaintiff filed his original
petition on December 18, 1914, wherein he
alleged that he was employed by defendant,
John Lovejoy, on or about March 19, 1913, at
a salary of $200 per month, to perform the
services of foreman and driller; that on said
date he entered upon the performance of such
services, and continued to perform such serv-
ices until March 14, 1914; that defendant
had failed and refused to pay him his salary
from November 1, 1913, to March 14, 1914;
that the amount due him was $893.34. On
October 29, 1915, defendant Lovejoy filed his
first amended original answer, denying the
allegations of plaintiff's petition, denying that
he had personally employed plaintiff, or that
plaintiff performed such work for defendant,
and alleging that such services were perform-
ed for the Pecos Valley Oil & Gas Company,
a corporation in which defendant was a
stockholder and president; that said corpo-
ration was primarily bound for any wages due
plaintiff; that if defendant was liable, it was
as surety, and his liability was secondary to
that of the corporation. Defendant further
alleged that said corporation, on February 1,
1914, became insolvent, and a receiver was
appointed therefor; that plaintiff was then
and there advised that as to the claim of
plaintiff against said corporation, un-
der the laws of New Mexico, where said cor-
poration had its domicile and principal place
of business, plaintiff was entitled to a first
lien upon the properties of the corporation to
secure the amount due him for services; that
defendant notified plaintiff and requested him
to prove his claim against said corporation,
that same might be established and paid out
of the assets of said corporation; that plain-
tiff refused to prove up his claim in such re-
ceivership, and establish his lien, and that
thereby defendant was released from any lia-
bility therefor. On December 18, 1915, plain-
tiff filed his second supplemental petition in
answer to defendant's first amended original

answer, denying that he was employed by the
Pecos Valley Oil & Gas Company, and alleg-
ing that he was employed by defendant, Love-
joy, and alleging, in the alternative, in case
the court should find that he was mistaken in
his allegations, or that such services were
performed for said corporation, that defend-
ant Lovejoy promised and agreed in writing
to pay plaintiff for such services irrespective
of the company, and was primarily liable
therefor, and that such services were per-
formed relying upon such promises. Plaintiff
further admitted that the Pecos Valley Oil &
Gas Company was a foreign corporation, or-
ganized under the laws of New Mexico, and
that it was insolvent, and had no permit to
do business in Texas. On February 18, 1916,
defendant filed his first supplemental answer,
substantially averring the same facts as al-
leged in his first amended original answer.
The case was tried February 18, 1916, before
the court without a jury, and was taken un-
der advisement until February 25, 1916, when
judgment was rendered for defendant, to
which plaintiff promptly excepted and gave
notice of appeal to the Court of Civil Appeals
for the First Supreme Judicial District of
Texas, at Galveston, and requested the court
to file his findings of fact and conclusions of
law, which were filed by the court. On
March 16, 1916, plaintiff filed his appeal bond,
and perfected his appeal to the Galveston
court, and the case is here before us by trans-
fer from said Galveston court.

Plaintiff's request for special findings of
fact was as follows:

"Comes now J. E. Bumpus, plaintiff in the
above numbered and entitled cause, and re-
quests the court, in addition to the findings of
fact heretofore filed herein, to file special find-
ings upon the following points, to wit:

"(1) Who was the principal obligor upon the
obligation for salary due plaintiff herein, upon
which the court finds that defendant, John
Lovejoy, to be a surety, by his findings of fact
heretofore filed herein.

"(2) If the court finds that the Pecos Valley
Oil & Gas Company, a corporation, was the
principal obligor upon the salary sued for by
plaintiff, then plaintiff asks that the court find
where said corporation was organized, and
whether or not it had a permit to do business in
Texas.

"(3) Whether or not said Pecos Valley Oil &
Gas Company, principal, was solvent at the time
defendant, John Lovejoy, gave plaintiff notice
to file his claim with the receiver.

"(4) Whether or not there was a mortgage
upon the assets of said corporation, Pecos Val-
ley Oil & Gas Company, at the time defendant,
John Lovejoy, gave plaintiff notice to file his
claim, which notice is found in findings hereto-
fore filed herein.

"(5) Whether or not under the laws of New
Mexico, a mortgage lien is superior to the lien
given laborers by statute.

"(6) Whether or not the lien which the court
finds plaintiff had under the laws of New Mex-
ico, upon the assets of the Pecos Valley Oil &
Gas Company, was a statutory lien.

"(7) What was the amount due plaintiff from
said Pecos Valley Oil & Gas Company, for sal-
ary, from November 1, 1913, to March 14, 1914,

upon which the court finds John Lovejoy to be a surety."

The findings of the court on said request are as follows:

"The court finds as a matter of fact in this case that the defendant, John Lovejoy, was liable as surety for the salary of the plaintiff at $200 a month from the 1st day of November, 1913, to the 14th day of March, 1914; that thereafter he gave notice to the plaintiff in writing to prosecute his claim against the corporation after the corporation had gone into the hands of the receiver; that under the law applicable to this case, plaintiff had a lien on the properties of the corporation for his salary; that the defendant sent a lawyer, to wit, Judge Brice, out to New Mexico to advise and assist the plaintiff in filing said claim and prosecuting it against the corporation which was the principal debtor; that the defendant, Lovejoy, in October, 1913, had repudiated any obligation of liability for the plaintiff's salary as principal, and had specifically instructed him that he was not to be liable except as a surety thereafter; that the plaintiff, Bumpus, failed and refused to prosecute his claim against the corporation and file his lien as provided by law after having been notified so to do by the defendant, Lovejoy, and that the plaintiff stated that he did not want to sue the company, but would make his claim out of Lovejoy and refused to sue the company, even though he (defendant) sent a lawyer out to New Mexico in order that plaintiff might file his claim against the company.

"I find as a matter of law that, the defendant, John Lovejoy, being a surety and having notified in writing the plaintiff to file his suit and prosecute his claim against the principal debtor, a corporation, and plaintiff having expressly failed and refused so to do, under the statute of Texas and the law applicable to this case, the defendant, John Lovejoy, is released from said obligation."

"Be it remembered that in the above numbered and entitled cause, at the request of plaintiff, the court makes the following findings of fact, in addition to the findings heretofore filed herein.

"I find that the Pecos Valley Oil & Gas Company, a corporation, was the principal obligor upon the indebtedness sued for by plaintiff in this cause, being salary due him, and that defendant, John Lovejoy, was a surety for said salary.

"I find that the Pecos Valley Oil & Gas Company was a corporation organized and existing under the laws of the state of Arizona, and had no permit to do business in Texas.

"I find that the Pecos Valley Oil & Gas Company was insolvent at the time defendant John Lovejoy gave plaintiff notice to file his claim with the receiver.

"I find that there was a mortgage upon the assets of the Pecos Valley Oil & Gas Company at the time defendant, John Lovejoy, gave plaintiff notice to file his claim with the receiver.

"I find that under the laws of New Mexico a mortgage lien is superior to the lien given laborers by statute.

"I find that the lien which plaintiff had upon the assets of the Pecos Valley Oil & Gas Company under the laws of New Mexico was a statutory lien.

"I find the amount due plaintiff, J. E. Bumpus, by Pecos Valley Oil & Gas Company, upon which defendant, John Lovejoy, was a surety to be $893.34."

Plaintiff's contentions in the premises are: (1) That the promises made by defendant to pay plaintiff his salary were unqualified promises to pay, irrespective of the company; thereby he became primarily liable to the plaintiff; (2) that if defendant, Lovejoy, was a surety upon the obligation, he could not be released by mere passivity on the part of plaintiff; (3) that if the obligee could require the filing of such claim, the written notice shown to have been given is wholly insufficient; (4) that if the notice shown to have been given was sufficient to require any action on the part of plaintiff, the principal was insolvent at the time, which rendered it unnecessary to take any action.

Following these contentions, the first and second assignments of error are as follows:

(a) The court erred in overruling plaintiff's objection to the testimony of C. R. Brice as to a verbal request made by him to plaintiff about proving up his claim.

(b) The court erred in his findings of fact that plaintiff failed and refused to prosecute his claim against the corporation, as provided by law, after having been notified to do so by defendant, and that defendant sent a lawyer to New Mexico in order that plaintiff might file his claim, because said findings are based upon the testimony of C. R. Brice, erroneously admitted over the objections of plaintiff.

His proposition is:

"Where the law requires a notice to be in writing in order to give it effect, the admission of testimony as to a verbal notice, when affirmatively shown by the record to have influenced the court's judgment, is reversible error."

On the contrary, it is contended that:

"Where the defense is predicated not only upon a formal notice by the surety to the creditor in writing to sue upon his demand, but also upon a willful and negligent loss of securities held by the creditor, it is proper to show the transactions between the surety and the creditor in order to determine whether there was a willful or negligent failure upon the part of the creditor to exercise the diligence required of him to realize upon such securities, and the testimony complained of was admissible for that purpose."

We do not understand the law to hold with appellee in this matter. As to the notice required under the statute, that a surety by notice in writing may require creditors to bring action against the principal debtor as soon as the right of action has accrued, it has been held that a verbal notice by the surety not acted on by the creditor will not release the surety from his liability. Leazer v. Menefee, 61 S. W. 438. And it has been also held that the written notice by the surety to the creditor or obligee that he "does not intend to pay until he is forced to do so," or that he "did not intend to pay the notes or any expenses attached to them until the courts say" he will have to do it, are insufficient as notice, under article 3811, tit. 84, Rev. St. 1895. Williams v. Ogg, 42 Tex. Civ. App. 558, 94 S. W. 420; National Bank of Commerce v. Gilvin, 152 S. W. 652.

[1] As above stated, it is our opinion that there must be written notice, and that a verbal request was inadmissible. The testimony shows that Brice testified as follows:

"Maj. Lovejoy asked me to have the plaintiff in this case prove up his claim. My recollection now is that I took it up with him; I am satisfied I did. I do not remember what he said about it. I can't recall. I can't even recall now what or where I said anything to him, but to the best of my recollection the matter was taken up, because I was instructed to do so by Maj. Lovejoy undoubtedly."

It will be seen from the court's conclusions that the court was influenced by this testimony in his findings. The assignments are well taken, and will be sustained.

The third assignment of error is as follows:

"The court erred in overruling plaintiff's objection to the testimony of John Lovejoy, and in permitting defendant to testify that he was acting in his official capacity as president of the Pecos Oil & Gas Company, in all of his dealings with plaintiff, instead of what actually happened between plaintiff and defendant, as shown by plaintiff's bill of exception No. 2."

The fourth assignment is:

"The court erred in his findings of fact that the defendant, John Lovejoy, was a surety upon the obligation sued on by plaintiff, because each and every promise made by defendant was a primary obligation of defendant to pay plaintiff his wages irrespective of the company, and such findings of fact were excepted to by plaintiff, as shown by his bill of exception No. 4."

The plaintiff testified:

"Mr. Lovejoy said he himself would pay me the $200 per month or would be personally responsible. He also wrote me from Houston on June 28, 1913, as follows: 'So far as the pay roll is concerned, I will take care of that under all circumstances, so you can go right ahead with the work.'"

On August 15, 1913, defendant, Lovejoy, wrote plaintiff as follows:

"This is a business proposition with me, and I do not want any favoritism with anybody. The men expect their wages, I am paying them, and I expect in return a full day's work. I want none but the very best and most competent men you can get."

On December 10, 1913, defendant wrote plaintiff as follows:

"Of course you understand from which I told you when I was out there, I would look after the labor bills myself. It does not make any difference if I were to lose all the money I put in, there is no man working by the day or month who will lose his wages. I told you that when I was out there, and *I know you have relied on it.*" (Italics ours.)

On January 3, 1914, defendant, Lovejoy, wrote plaintiff as follows:

"I wish you would send me the pay roll for December. I want to try and send you checks to cover both November and December pay rolls in a few days. Sorry I have been delayed but it is very hard to get hold of money here now."

On January 5, 1914, he wrote him as follows:

"The company will have to pay all bills for material, and at present I have not as yet arranged the money affairs of the company, but as I wrote you before, irrespective of the company I will attend to the wages of the men."

[2] It is evident to this court that the conclusions of the defendant, as expressed in his testimony, are shown to have been considered by the court, as expressed in his findings. There is no evidence, in our opinion, that will sustain the findings of the court, to the effect that the defendant, Lovejoy, was a surety, and that the Pecos Valley Oil & Gas Company, a corporation, was the principal. Being of the opinion that these assignments are well taken, they are, in all things, sustained.

The fifth assignment is as follows:

"The court erred in findings of fact that defendant in October, 1913, repudiated any obligation of liability for plaintiff's salary, and specifically instructed him that he was not to be liable except as a surety, because there is no evidence to support such findings, and said findings were excepted to by plaintiff," etc.

On October 9, 1913, defendant, Lovejoy, wrote plaintiff as follows:

"I am instructed by the board of directors of the Pecos Valley Oil & Gas Company to ask you to take charge of everything connected with the property of the company. The board of directors want you to keep the accounts of everything bought and the pay roll, and to tell Mr. Bain and his father that their services will not be required any further by the company. You can make your report to me as president of the company. We have a new board of directors now, which is controlling all of the affairs of the company."

On the same date defendant wrote a personal letter to plaintiff, as follows:

"I am writing you a separate letter from this, stating that the board of directors have put you in charge of the whole work and the whole field and to let Bain and his father out. I am also writing a letter to Bain that his services will no longer be required, so I want you to have everything turned over to you, and let him and his father move off the premises together. This letter, of course, is to you and no one else. He will not know that I received any letter from you about what is going on, but I will put the whole responsibility where it was on the report that was made by Robinson."

On December 10, 1913, defendant wrote plaintiff as follows:

"Of course you understand from what I told you when I was out there, I would look after the labor bills myself. It does not make any difference to me if I lose all the money I have put in, there is no man working by the day or month who will lose his wages. I told you that when I was out there and I know you have relied on it."

The findings of the court seem to have been predicated upon the letter of October 9, 1913, as above stated, and on a letter written December 10th, two months after the court finds that he repudiated any liability, he admits telling plaintiff he would pay the labor, and that he knew plaintiff had relied upon it, and upon January 3d following that he would pay for the labor, irrespective of the company. The assignment, as above said, is well taken, and it is sustained.

The sixth assignment challenges the action of the lower court in his findings of fact that defendant gave plaintiff notice in writing to prosecute his claim against the corporation principal, because "the notice in writing shown to have been given is insufficient to constitute notice in writing as required by

the statutes of this state, and said findings were excepted to by plaintiff." The proposition under this assignment is:

"In order for a surety to require an obligee to file suit against his principal, he must give him written notice to do so, which notice must be full, explicit, and a peremptory demand to file suit, followed by the statement that the surety will not be further liable if such is not done."

The only notice that is reflected by the record is contained in a letter from defendant to plaintiff dated February 2, 1914:

"Mr. J. E. Bumpus, Artesia, New Mexico—Dear Sir: I am in receipt of your telegram as follows: 'Please wire me today what you are going to do.' I do not know what I am going to do yet. I want to know first what the situation is out there. That is, I want to know if you have given bond and qualified as receiver. I have not learned from Judge Brice yet what he did exactly, except that I know he had a receiver appointed and had you named as receiver, and that the court refused to make receiver's certificates first lien on the property. If the receiver's certificates had been made first lien on the property I could have placed them here and paid some of the debts of the company, that is, I could have paid all the labor bills and liens for material.

"Judge Brice wired you to prove up your claim for your monthly wages, November, December and January. If you have not done so, do so on receipt of this letter. It will take some time for me to say just what can be done with this property. I am more interested than anybody else because the company owes me about twenty thousand dollars in cash money, and that is about one-half what the company owes, but still I am willing for them to get the money before I do.

"I am writing you instead of telegraphing because I do not want to go to the expense of telegraphing.

"I wish you would let me know if you can get a rig to finish up the Altus well and about what it will cost to finish that well. You never told me what the result of shooting the Terry well was, or in what condition you got the Terry well. Let me hear from you on receipt of this letter.

"Yours truly,                    John Lovejoy."

To this letter the plaintiff answered as follows:

"Mr. John Lovejoy, Houston, Texas—Dear Sir: Your letter of 2d received, and you want to know what the situation is out here. Now that depends altogether on what you are going to do for I cannot do anything out here at all without money. I made application for a bond and I got the whole thing back last night and they refuse to make a receiver's bond where the liabilities are so much greater than the assets so they returned me my money. So I cannot qualify as receiver but I do not see as you need a receiver if you want to go ahead with the work for the creditors are willing for you to go ahead and finish the Altus well.

"I never got any telegram from Judge Brice at all in regard to the wages for November, December and January. When I left Mr. Brice at Carlsbad he told me he would instruct me as soon as he got to Houston. Now I do not understand why you request me to prove up my claim for my wages for November, Dec. and Jan. as you have written me that you would see that the wages were paid yourself. So I am still relying on what you have said and am still looking to you for my pay.

"Now Mr. Lovejoy I have reached the end of my string and unless you send me my wages I cannot do anything more and will have to get employment elsewhere for I have a family to support. I will mail you pay roll for January and also statement of my account. Please give this your attention.

"Now about finishing up the Altus well, we can move the machinery from the Martin well up there and do that work cheaper than to get another rig, and if we get any oil we will have the rig to pump it with. Now as to the Terry well, I do not know what it will do for when I shot it I ruined the bottom joint of casing so we will have to pull and reset the casing before we can pump it and cannot tell results until this is done. We just got it cleaned out nearly to bottom when Feemster got up on his ear and quit so I cannot do anything with it as it is his rig.

"Now Mr. Lovejoy I wish you would give these matters your attention as it means everything to me as I have paid out all the money I have trying to keep things going besides making three trips to Carlsbad and one to Roswell."

The following letter was received by plaintiff in reply from defendant, dated April 7, 1914:

"Your favor of March 21st was duly received. I have delayed answering your letter, thinking I would have something of importance to write you, but I have not. I had hoped to close a deal last week with parties to take the property over, pay up all the debts except mine, and go ahead with the work. I have loaned the company over twenty thousand dollars, and I do not expect to get a dollar of it back. I am willing to lose it, provided I can make arrangements with people to take it over and pay the other creditors. Did you prove up your claim with the receiver? If not, you should do so. Since the receiver took charge all of his expenses, including a keeper of the property, will be paid out of the property first. If you are in charge of the property for him he will have to pay that out of the property when sold. All of his expenses are a part of the court costs. The reason I wanted you to prove up your claim, is because I am on a deal with another party who has, in a way, promised to pay the debts all except mine, at least those debts which are a lien on the property, including all labor bills. I will get everything shaped up probably after a while, but at present I am pretty much crippled and will have to have time to build up."

[3] The above is the testimony relied on by appellant. The evidence in the case did not justify a finding upon the part of the court that a written request had been given on the part of appellant to the appellee to file suit upon his claim against the corporation, which was claimed to be the principal debtor, and it is not shown by this record that his failure to file his claim, and act upon the request of appellant brought about and was the occasion of the loss of any security which he had for the payment of his indebtedness, for the reason the record shows that there was a $4,000 mortgage against the property, and the record does not show that the assets of the property were sufficient to satisfy the mortgage, and the record does not show that if the appellee had a lien upon the property, by virtue of being a laborer, that the same was a first lien, under the laws of New Mexico, but was subject to prior mortgages.

In our opinion, the notice was insufficient, and was merely an inquiry, seeking to ascertain whether or not the obligee had filed

a claim with the receiver, and we do not see how, by any construction, the same could be considered a demand to file suit.

[4] Further, we are' of opinion that the court erred in holding that the defendant, Lovejoy, was released by failure of defendant to file his claim with the receiver, for the reason: (a) The proposed notices in writing shown to have been given by defendant to plaintiff are totally insufficient to constitute notice in writing that a suit be filed, as required by the statute—the statutory requirements were not fulfilled; and (b) we are of opinion that at the time such proposed notices were given, as shown by the record, the Pecos Valley Oil & Gas Company, which it is claimed was the principal obligor, was insolvent.

It is strenuously insisted that the appellant was only a surety or guarantor, and that it was his duty, especially when requested to do so by appellee, to enforce against the principal debtor such securities as he had for the payment of the debt, and that appellant had a lien to secure the indebtedness sued for upon the properties of the corporation, and that the lien was lost by the failure of appellant, although requested, to proceed against the corporation and the property upon which he held the lien, and that thereby the appellee, being a surety, was released. It is not shown by this record that the Pecos Valley Oil & Gas Company had property of sufficient value over the sum which was secured by first lien, to wit, the mortgage, to satisfy the claim of this appellant; therefor it is not shown by this record that the appellant had the means of satisfaction of his debt actually or potentially within his grasp. The laws of New Mexico, as reflected by this record, only give the appellant a lien, subject, however, to all recorded prior mortgages, and, further, as said before, reflects that there was at least one mortgage of $4,000 upon the property of the company. The record further reflects that the appellant relied, and was entitled to rely, upon the written promises of the appellee for his pay, and upon which, in the opinion of this court, he was warranted in relying. The assignment, therefor, is in all things sustained.

We believe, from this record, that Lovejoy, the appellee, was primarily liable for the obligation sued on, and that the trial court erred in holding him to be a surety. We also believe that if Lovejoy was a surety, the court erred in holding that he was released from such obligation. Therefore, believing, as we do, that the trial court erred in his findings of fact and his conclusions of law, and it appearing from this record that the case has been fully developed, it is our judgment that the cause should be reversed and rendered in favor of the appellant. It is so ordered.